# Messer Real Estate & Insurance Co. *v.* Ruff.

## *Assumpsit.*

(Decided November 18, 1913. Rehearing denied December 18, 1913 64 South. 51.)

1. *Contracts; Rescission.*—Parties who are sui juris may rescind an executory contract at pleasure without any new consideration therefor; mutual assent of the parties furnishing a sufficient legal consideration for such rescission.

2. *Vendor and Purchaser; Contracts; Rescission.*—Where a contract for the sale of land remains unexecuted the parties to the contract may rescind it by consent, if no rights of third persons have intervened.

3. *Same; Rescission.*—Where under the contract, one of the contingencies was that the owner should convey and the purchaser should receive good title, the parties might, by mutual consent, abandon the contract where such performance became impossible, regardless of the right of plaintiff who as brokers negotiated a contract of sale subject to the approval of the owner, and the furnishing of an abstract showing good title to the property.

4. *Same; Abandonment; Effect.*—Where the purchaser of land paid $1,000 as earnest money to the owner's agent under a contract requiring the owner to convey a good title and that being impracticable, the contract was abandoned, the purchaser became entitled to a return of the earnest money.

5. *Same; Performance; Time.*—The law fixes a reasonable time for the performance of a contract of sale of land, where the contract fixes no time.

6. *Brokers; Compensation; Rights of.*—Where brokers effected a contract for a sale of land and received payment of earnest money under the contract which provided that the vendor convey a good title, they were not entitled to retain the earnest money where the parties abandoned the contract because of the inability of the vendor to convey such title, regardless of whether the vendor owed them a commission; an agent can acquire no greater rights than his principal.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Assumpsit by Henry Ruff against the Messer Real Estate & Insurance Company. Judgment for plaintiff and defendant appeals. Affirmed.

Ruff paid the Messer Real Estate & Insurance Company $1,000 earnest money to bind the contract of sale of real estate which fully appears from the opinion. The contract having been abandoned by the parties thereto because of the inability of the vendor to convey a good title, Ruff demanded the return of his earnest money which he had paid to defendants as agents for the vendor in the original contract, and they having refused to return it, he brought an action on the common counts, and upon the contract.

NATHAN L. MILLER and NEEDHAM A. GRAHAM, for appellant. The complaint was subject to the demurrers interposed.—*Ivey C. & C. Co. v. Long,* 139 Ala. 535; *Ins. Co. v. DeJarnette,* 111 Ala. 256. The money having been paid to defendant as the agent of Cooke knowing it to be such agent without fraud or want of authority to bind its principal, plaintiff could not maintain this suit against the agent for the return of the money, his action being, if he has any, against the principal.—*Gulf City C. Co v. L. & N.,* 121 Ala. 625; *Comer v. Bankhead,* 70 Ala. 496; *Jackson v. Clopton,* 66 Ala. 29; *Roney v. Winter,* 37 Ala. 278; *Euf. Gro. Co. v. Mo. Nat. Bank,* 118 Ala. 408; 36 Atl. 319; 108 N. Y. Supp. 573. The defendant had earned his commission as a broker.—*Sayre v. Ingram,* 86 Ala. 150; 19 Cyc. 247-9, 255-6.

VASSAR L. ALLEN, for appellee. No brief reached the Reporter.

DE GRAFFENRIED, J.—J. W. Cooke, of Maben, Miss., owned a lot in the city of Birmingham, on which was situated the "Bonita Theater." The Messer Real Estate & Insurance Company, as the agents of Cooke,

rented out this property, looked after its taxes, and collected the rents. On or about the 11th day of February, 1911, Henry Ruff informed the Messer Real Estate & Insurance Company that he desired to buy the property. Thereupon the Messer Real Estate & Insurance Company wrote to Cooke, informing him that a party desired to buy the property, and asked Cooke to name his figures, and requested the authority to sell the property for him as his agent. Cooke thereupon, on the 18th day of February, 1911 wrote to the Real Estate & Insurance Company the following letter:

"Maben, Miss., 2/18/11.

"Mr. M. P. Messer, Birmingham, Ala.—Dear Sir: In re your letter of the 11th inst., asking for a price on my Third avenue property will say that I have always refused to price this particular piece of dirt but if your man will pay me $40,000.00 net, carry out my lease to the moving picture people, assume the indebtedness against same, paying me the difference between the $40,-000.00 and the amount now held against the property, which is approximately $13,000.00, in cash, I will make him a deed to the property and will transfer to him the insurance now in force and paid up for this year. This offer will hold good not later than March 1, 1911.

"Yours hurriedly,            J. W. Cooke.

"This is a 5% loan."

Thereupon the Real Estate & Insurance Company offered the property to the said Ruff at $42,500, and Ruff and the Real Estate & Insurance Company entered into the following agreement:

"Birmingham, Alabama, Feb. 22d, 1911.

"This is to certify that we have this day sold to Henry Ruff the north one-half of the east one-half of lot 4, block 86, Birmingham, Alabama, for $29,500.00 cash, and the assumption by him of a certain mortgage on

the above-described property, payable to the Penn Mutual Life Insurance Company in the sum of $13,000.00 as follows: $1,000.00 payable Jan. 1st, 1912; $1,000.00 payable Jan. 1st, 1913; $1,000.00 payable Jan. 1, 1914; and the balance of $10,000.00 payable Jan. 1st, 1915; the same bearing interest at the rate of five (5%) per cent. per annum, interest payable semi-annually, and we herewith acknowledge the receipt of $1,000.00, the same being part of the purchase money to bind the sale, said sale being subject to the approval of J. W. Cooke, owner, and an abstract of good title conveying the above-described property unincumbered, except as stated above. The purchaser agrees to assume the lease contract now in existence which expires September 20th, 1912.

"Signed in duplicate this 22d day of February, 1911.

"Messer Real Estate & Ins. Co., Agts.,

"By M. P. Messer, Prest.

"I hereby accept the above contract of purchase.

Henry Ruff."

The $1,000 referred to in the above contract was represented by a certified check, payable to the Messer Real Estate & Insurance Company, dated February 22, 1911, and which check was held by said Real Estate & Insurance Company until March 20, 1911, when it was by said company presented to and was paid by the bank upon which it was drawn, and the proceeds were by said company credited on the account of J. W. Cooke under the circumstances hereinafter stated. When the above-described contract was signed and delivered, the Messer Real Estate & Insurance Company sent, on said February 22, 1911, the following telegram to the said J. W. Cooke: "Have sold your Third avenue property for twenty-nine thousand five hundred dollars and as-

sumed your mortgage of thirteen thousand dollars. Wire acceptance." Thereupon Cooke sent to said Real Estate & Insurance Company the following reply: "Telegram received. Will execute special warranty deed as per terms my letter February 18th. Write full instructions." Thereupon the Real Estate & Insurance Company wrote to Cooke the following letters:

"Messer Real Estate & Insurance Co.
"Birmingham, Ala., Feb. 22, 1911.

"Mr. J. W. Cooke, Maben, Miss.—Dear Mr. Cooke: I wired you to-day as follows: 'Have sold your Third avenue property for twenty-nine thousand five hundred dollars cash and assume your mortgage of thirteen thousand dollars. Wire acceptance. M. P. Messer'— which I now confirm. We have entered contract with purchaser and accepted $1,000.00 to bind the sale, pending the examination of title. I have had Otto Marx & Co., agents for Penn Mutual Life Insurance Co., to wire to Philadelphia for abstract of this property, we shall proceed to close this sale up as rapidly as possible, I congratulate both you and ourselves on this most excellent sale.

Yours very truly,
"[Signed] M. P. Messer, President."

"Messer Real Estate & Insurance Co.
"Birmingham, Ala., Feb. 25th, 1911.

"Mr. J. W. Cooke, Maben, Miss.—Dear Mr. Cooke: On to-day we received the abstract from the Penn Mutual Life Ins. Co., of Philadelphia, Pa., to your Third avenue property, which I sold as per my letter and telegram to you of date February 22nd, 1911. I have placed the abstract with the Abstract Company to be brought down to date. As soon as the purchaser has had same examined by his attorney and deed made, I will for-

ward same to you and your good wife for your signatures.

"Yours very truly,

"[Signed] M. P. Messer, President."

"Messer Real Estate & Insurance Co.

"Birmingham, Ala., March 1st, 1911.

"Mr. John W. Cooke, Maben, Miss.—Dear Mr. Cooke: As per our sale of your 3rd Avenue property, of date February 22nd, we are enclosing you herewith deed for your and your good wife's signatures. When signing said deed to Henry Ruff before a notary public, do not fail to sign your name *John* W. Cooke. The decree in chancery court settling your title in 1904, rendered the decree to you in the name of John W. Cooke. I note that you formerly in making mortgages, signed the mortgages, 'J. W. Cooke,' which was incorrect. If any question was raised we would have to prove that J. W. Cooke is the same man as John W. Cooke, hence the importance of your signing this deed as requested above. As soon as you have returned this deed to us we will send you a certified check, or New York Exchange, in the sum of $27,000.00 which makes the property net to you $40,000, as per our contract with you for sale of same. Please get this deed back to us by Saturday, the 4th, if possible, as the purchaser will return to the city on that date and will want to close up the matter, if not closed Saturday, we will close it early Monday before he leaves the city again. Congratulating both you and ourselves on this most excellent sale it being the highest price at which any property has ever been sold in the community in which it is located, and wishing you continued success, I am,

"Very truly yours,

["Signed] M. P. Messer, President."

The deed referred to in the letter last above contained general covenants of warranty as to title. Cooke and wife refused to execute this deed, but prepared and properly executed another deed, with covenants of warranty against all persons "claiming by, through, or under" the said Cooke and wife. On the 9th of March, 1911, a suit in ejectment was brought against said Cooke for said lands by third parties, and Ruff refused to accept this latter deed unless Cooke would indemnify him against loss on account of said ejectment suit. This Cooke refused to do. Thereupon, after various negotiations to which we do not deem it necessary to refer, the agreement of purchase was canceled and Ruff leased the property from Cooke.

The Messer Real Estate & Insurance Company claims that Cooke owes it $2,500 on account of the above transaction. Ruff agreed to pay $42,500 for the land, and if the sale had been consummated said Real Estate & Insurance Company would have received $2,500 out of the proceeds of the sale as its commission for negotiating the sale; and on March 20, 1911, this Real Estate & Insurance Company charged Cooke on its books with said $2,500, as of February 22, 1911, and on said day had the bank on which the above-described check was drawn to pay the check, and this money the Real Estate & Insurance Company retained, and credited the same on the said Cooke's account. On the subject of this charge of $2,500 and this credit of $1,000 on the books of the Real Estate & Insurance Company the bookkeeper testified: "That entry of February 22d was made on March 20th. It was held off until that split occurred on the 9th of March; the whole matter was held off the books until it was determined whether or not the trade would go through." In other words, after it became apparent that the agreement between Cooke and

Ruff as to the purchase of the property was not going to be consummated, then the Messer Real Estate & Insurance Company charged Cooke with $2,500 on its books as commissions for making the sale, and then proceeded to the bank and had the check for $1,000, which Ruff had given said company as "part of the purchase money to bind the sale," cashed, retained the money, and credited the Cooke account with the proceeds. The theory of the Messer Real Estate & Insurance Company was and is that J. W. Cooke owed said company $2,500, as above stated; that Ruff owed Cooke the purchase price of the land; that the $1,000 was a part of the purchase price of the land, and that therefore this money was Cooke's money, and that, as the Real Estate & Insurance Company came lawfully into the possession of the money, it had a right to so credit it on the amount which, according to its theory, Cooke was due said company.

We may as well say, before we conclude this statement of fact, that when Cooke and Ruff, by mutual agreement, rescinded the executory agreement of sale, Cooke told Ruff that he had never laid any claim to the $1,000 in the hands of the Real Estate & Insurance Company, and that Ruff could demand and receive that money of said company.

The agreement of sale between Ruff and Cooke was, while it was unexecuted—no deed was ever delivered—by mutual agreement, rescinded. It is not contended that this rescission was done for a fraudulent purpose, i. e., for the purpose, participated in by Ruff, of defeating the Messer Real Estate & Insurance Company of its commissions. On the contrary, we gather from this record that Cooke is solvent and can be held to the payment of any money which he may owe said Real Estate & Insurance Company.

Under our law parties who are sui juris possess the utmost liberty of contracting with reference to all matters not forbidden by law; and it is a familiar principle that parties to an executory contract may, at pleasure, rescind any such contract, without any new consideration therefor, the mutual assent of the parties to the rescission furnishing a sufficient legal consideration for such rescission.—2 Mayf. Dig. p. 798, subd. 692.

(1) When an agreement is made between two parties relative to the sale and purchase of a tract of land, the contract of sale, although it may by a proceeding in equity be enforceable, remains unexecuted until there has been a deed, conveying the title to the land, executed and delivered by the grantor to the grantee. At any time before the actual delivery of the deed—no rights of third parties intervening—the parties to such agreement may, by mutual assent, rescind it, and the rescission, unless there is some agreement to the contrary, places the parties in the same attitude as if they had never made such an agreement.

(2) It not infrequently happens that, although the recorded deeds may show a perfect title to real estate in a certain person, that person has not, by reason of some fact not shown by the recorded deeds, any title whatever to such lands. Some other person, in spite of the recorded deeds, may have a perfect title to the land.

The agreement between the Messer Real Estate & Insurance Company, as agents of Cooke and Ruff, dated February 22, 1911, and which we have above set out, clearly contemplated that the contract should not be binding upon Ruff unless Cooke could convey to Ruff a perfect title, subject to the mortgage for $13,000 to the land. It further contemplated that the abstract should show this perfect title, and that it should show

this title when the deeds were delivered. No time was fixed by the parties for the execution of the contract, and the law therefore gave them a reasonable time within which to complete it. When the time for the delivery of the deed arrived, a suit by third parties was pending in Jefferson county against Cooke for this land. The agreement, fairly construed, shows that it was not the intention of Cooke to sell to Ruff, and not the intention of Ruff to buy from Cooke, a lawsuit, and, while nothing was said in the contract with reference to the lawsuit, nevertheless; under the principles above announced, so long as the contract remained executory, the parties to that contract had the right, if they mutually agreed to do so, to rescind that contract on account of such lawsuit, or for any other reason, and place each other in statu quo. The trial judge therefore clearly charged the jury the law when he said in his oral charge:

"The contract of February 22, 1911, as you have doubtless observed, is not a completed contract for the sale of the lot therein mentioned. The proposed sale is by the terms of that contract made subject to contingencies, one contingency being that the agreement entered into by the defendant realty company and Ruff was to be approved by the owner of the land, Mr. Cooke. Another one of the contingencies is that an abstract of title is to be furnished showing title to be in Cooke, excepting the existence of a mortgage given to the Penn Mutual Company for about $13,000."

"The contract being in that condition, the minds of the parties to the sale, the principals to the transaction, not having up to that time ever come together completely, the completion of the contract being held up to that time in abeyance, it was competent for the principals to the contemplated sale to carry on the nego-

tiations further, and in such negotiations it does not appear that the real estate company had any control of either one of the principals in the transaction. It was competent for Cooke on the one part and Ruff on the other part to conduct their negotiations, and if it became impracticable for them to agree further upon the terms of the sale, then they were competent to abandon it without the consent of the defendant real estate company."

(3) This record discloses that at all times Ruff was willing to accept from Cooke, in spite of the pendency of the lawsuit, a conveyance with general covenants of warranty, but that he was unwilling to accept a deed with covenants of warranty limited to the acts of Cooke unless Cooke would give him an agreement indemnifying him against loss by reason of the above-described lawsuit. Cooke refused to sign and deliver a deed with general covenants of warranty, and was only willing to give a deed with warranty against his own acts. He was unwilling and refused to give Ruff an indemnity against loss on account of the lawsuit. This being the situation of the evidence, the trial judge properly charged the jury as follows: "If, by reason of the existence of suits against Cooke for the property, or if, by reason of the limited character of the warranty expressed in the deed made by Cooke, there was a failure on the part of Cooke and Ruff to complete the contract of sale, then, without any writing to that effect, it was competent for them to abandon it and for Cooke to abandon all right as between himself and Ruff to the payment which Ruff had made to the real estate company. If you find that there was such an abandonment of the contract for such causes, and that by the agreement so abandoning the transaction, Cooke abandoned all right to the $1,-000 payment, and that it had not been up to that time

paid over to him in some form other than by a credit of his account upon the books of the real estate company, then the plaintiff Ruff had a right to recover the amount of the payment so made to him."

(4) Undoubtedly, there was evidence tending to show that Cooke, by his acts, ratified the contract—if, indeed, it needed ratification—which was made by the Messer Real Estate & Insurance Company with Ruff on February 22, 1911, so as to make that contract, executory in its nature, binding upon him. In other words, there was evidence tending to show that Cooke, by his acts, ratified the acts of said Real Estate & Insurance Company in making ·the contract—if such contract needed ratification—in such sort as that, in a suit by Ruff upon that contract, he could not have denied the authority of said Real Estate & Insurance Company to make the contract.

The check which was turned over to the Real Estate & Insurance Company "to bind the trade," was, in our opinion, under the terms of the contract itself, a check which was to become the property ex equo et bono of Cooke only when Cooke did those things which, under the law, his contract required him to do. That check ex equo et bono belonged to Ruff until Cooke carried out his contract. The parties never did get together and complete the trade. By mutual agreement they rescinded it. This mutual agreement—which the parties were certainly competent in good faith to make— forecloses any consideration as to whether Cooke or Ruff was in the wrong pending the negotiations which finally resulted in a complete rescission of the contract. The Messer Real Estate & Insurance Company acquired no greater rights to the check than did their principal, Cooke. In this transaction the rights of the real estate company to the $1,000 must be worked out through

Cooke; and Cooke, having rescinded the contract, is certainly in no position to claim ex equo et bono the check or its proceeds. For this reason the plaintiff, under all the evidence, was entitled to the general affimative charge as to count .4 This being the situation, it seems to us that it is not necessary for us to consider any other question presented by this record.

Cooke may owe the Messer Real Estate & Insurance Company more than the $1,000 involved in this suit, because of Cooke's failure to complete a trade which said Real Estate & Insurance Company made for him. If this be true, such fact in no way authorizes the said Real Estate & Insurance Company to retain from Ruff and apply on the Cooke debt money which ex equo et bono belongs to Ruff and to which Cooke is not ex equo et bono entitled The agent is not superior to his principal, and under the facts of this case the rights of the agent must be measured by the rights of the man in whose shoes, at all times during this matter, it has stood.

The judgment of the court below is affirmed.
Affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.