## ISAAC ROBINSON vs. NATHAN HEARD.

In an action on a bond, conditioned to purchase and pay a stipulated price for a tract of timber land, testimony that the land was of trifling value compared with the price contracted to be paid therefor, is inadmissible in evidence, unless the party will also prove, that the obligee made fraudulent representations in relation to the same, or had knowledge of the facts, when the contract was made.

In such action a paper of the same date, *not* under seal, signed by the obligee, and having reference to certificates to be furnished by him to the defendant respecting the quantity and quality of the timber upon the land agreed to be sold, is inadmissible as evidence.

In such suit, if the terms of the contract show that payment of money is to be made *before the deed is to be given*, and no money is paid or offered at the time fixed, the action may be maintained without first tendering a deed of the land.

When a contract is made to purchase and pay for land by one party, and to sell and convey by the other on payment of the price, and an action is brought against the purchaser for breach of the contract on his part, without tendering a deed, the measure of damage is the difference between the sum, which the purchaser agreed to pay for the land and the sum for which it would have sold on the day on which the contract should have been performed.

Where one party calls a witness, a paper admitted by the witness to be true, although not then under oath, contradictory to his testimony, is competent evidence for the other party.

EXCEPTIONS from the Court of Common Pleas, WHITMAN C. J. presiding.

Debt on a bond, dated *Aug.* 17, 1835. The condition of the bond recites, " that whereas the said *Robinson* has agreed to sell and convey to said *Heard* a certain lot or piece of land," particularly described, and containing twelve hundred and eighty acres, "and the said *Heard* in consideration thereof, hath agreed to pay to the said *Robinson*, his heirs and assigns, executors or administrators, the sum of six dollars per acre for each and every acre of said land, one third part of said purchase money in thirty days from this date, and one third part in one year, and one third part in two years from date, with interest upon the same, two notes with good security being given for the two last sums. Now therefore if said *Heard*, his heirs or assigns, executors or administrators, shall well and truly pay, or cause to be paid, to said *Robinson*, his heirs or assigns, executors or administrators, the aforesaid one third part of

said purchase money within the time aforesaid, and furnish the two notes aforesaid with the security aforesaid, said *Robinson* being ready and willing to make the deed of conveyance as aforesaid free of all incumbrances, then the obligation to be void." On the trial, the defendant offered in evidence a paper dated the day of the date of the bond, not under seal, and signed by the plaintiff, in which the plaintiff after describing the bond, agrees to procure the indorsements of good, credible and well informed men, duly qualified to judge, upon the back of certain certificates relating to the quantity and quality of the timber upon the land, that the persons signing the certificates were men of truth and veracity and well qualified to judge of the subject matter contained in the certificates. The Judge, on objection made, excluded the paper. In a deposition of the subscribing witness to the same paper, taken by the defendant, the witness was requested to annex a copy of the paper, and it was annexed. At the time of the taking of the deposition, the question and answer were objected to, and again at the trial, and ruled to be inadmissible. The other facts in the case, and the ruling of the Judge at the trial, appear sufficiently in the opinion of the Court.

*Preble* argued for the defendant, and cited *Sugden on Vendors*, 161, 162; 1 *Saund.* 320, *note* 4; *Hunt* v. *Livermore*, 5 *Pick.* 395; 2 *H. Black.* 123; 8 *T. R.* 366; 1 *East*, 619; 1 *H. Black.* 270; 4 *T. R.* 761.

*W. P. Fessenden* argued for the plaintiff, and cited 4 *Dane*, 389; *Doug.* 688; 3 *Stark.* 1002; *Dwight* v. *Pomeroy*, 17 *Mass. R.* 320; 3 *T. R.* 413; 12 *East*, 578; 2 *Wilson*, 376; *Kelleran* v. *Brown*, 4 *Mass. R.* 445; *Com. Dig. Pleader*, 2 *W*; *Shed* v. *Peirce*, 17 *Mass. R.* 623; 7 *T. R.* 350; 8 *East*, 346; 5 *T. R.* 564; *Dix* v. *Otis*, 5 *Pick.* 38; *Kimball* v. *Morrell*, 4 *Greenl.* 371; *Haven* v. *Brown*, 7 *Greenl.* 423; *Hanson* v. *Stetson*, 5 *Pick.* 506; *Freeport* v. *Bartol*, 3 *Greenl.* 340; 2 *Story's Eq.* sec. 1314.

The case was continued for advisement, and the opinion of the Court was afterwards drawn up by

EMERY J. — To this action of debt on bond which the defendant executed, as is alleged by the plaintiff, on the 17th of *August,*

1835, in the penal sum of $15,000, the defendant after craving oyer of the bond and condition, pleaded that it is not his deed, and filed his brief statement of additional grounds of defence, that it is not his bond, the same having been obtained by misrepresentation and fraud. 2. That said *Robinson* was not ready and willing, within thirty days from the date of the bond, to make the deed of conveyance in the condition mentioned, nor was he ready to do and perform, nor did he tender or offer to do and perform whatever he was bound on his part to do and perform. 3. That in and by the original contract between the parties, the said *Heard* was not at any event bound to accept a deed of the land mentioned in said condition, but that he agreed to purchase the same only on condition there were growing on said land a large amount of pine timber, good and merchantable, to wit, twenty-five thousand feet to the acre at least.

The case comes before us on exceptions against the *rulings* and instructions of the Chief Justice of the Court of Common Pleas. It is requisite for the defendant, to satisfy this Court, that the ruling of that Judge was incorrect in rejecting the offered proof, that the whole of said lot of 1280 acres, mentioned in the bond, was burnt land, barren heath of no value, and meadow, and destitute of timber, as wholly irrelevant and inadmissible, unless the defendant would also prove, that the plaintiff knew that fact at the time when the bond was executed.

The defendant, by his counsel, contends, " that the covenants in the bond were mutual and reciprocally dependent, and that he who would avail himself of the benefit must first tender or offer to perform ; that as *Robinson* tendered no deed, it does not appear that he was ready to perform his part ·of the contract ; that the agreement signed by *Robinson* was an integral part of the contract; that if necessary to stretch a principle to do right, this case will support the Court in making the effort ; that it would be the merest technicality, if they are not to be construed together ; that the contract was obtained by misrepresentation and sounds in fraud, though no moral fraud, and whether *Robinson* knew or not the deception on the defendant, it is the same. He also objects, that by the verdict the defendant is made to pay for the land, and yet it belongs to *Robinson*, that he has never tendered a deed nor brought any into Court.

" In equity a purchaser would be entitled to relief on account of any *latent* defects in an estate, or the title to it, which were not disclosed to him, and of which the vendor or his agent was aware. But a provident purchaser should examine and ascertain the quality and value of the estate himself.

"As to false representation to a purchaser of value or rent, the same remedy will lie against a person *not interested in the property*, for making such false representations as might be resorted to in case such person were owner of the estate, provided the statement be *fraudulently* made, with an intention to deceive, whether it be to favor the owner, or from an expectation of advantage to the party himself, or from ill-will towards the other, or from mere wantonness. And it will be sufficient proof of fraud to shew first, that the fact represented is false ; secondly, that the person making the representation had a knowledge of a fact contrary to it. And it is no excuse in the party, who made the representation, to say, that though he had received information of the fact, he did not at that time recollect it.

" It is equally true, that if the person to whom the sale is made was aware of all the defects in the estate, he cannot impute bad faith to the seller in not repeating to him what he already knew, nor will the seller be liable *if he were ignorant of the defects*, or if they were such as might have been discovered by a vigilant man.

" The purchaser must take the property as it is, if he bought with full knowledge of the actual state of it." *Sugden's Vend.* 37, 38.

It appeared, that *Robinson* utterly declined to guarantee a certain quantity of timber on the land.

It is also in evidence that the defendant, with a *Mr. Waite, B. Stinchfield,* and two *Libbeys* was seven days on the township to which this land belongs, and explored it to *Waite's* and *Heard's* satisfaction, as they said.

It also appears that about the middle of *Sept.* 1835, at the American House in *Boston, Robinson* said to *Heard*, that he was ready to deed on the contract according to contract, and his answer was that he should not take it.

Permission having been afforded by the Judge, for the defendant to implicate the plaintiff with knowledge of the quality of the land and timber at the time of the execution of the bond, which

liberty was not improved, we coincide with the Judge in the opinion that the evidence was irrelevant and inadmissible.

The Judge instructed the jury, that the writing given by *Robinson*, and the subject of it, was an independent contract, and could not be offered, as constituting a part or appendage to the bond, nor could a non-compliance with the stipulations by *Robinson* be set up in this action by way of defence.

The instrument on which the suit is brought is of a more solemn character, than the paper attempted to be drawn into connection with it, the bond being under seal, and the paper offered is without seal, and contrasted with the bond, is to be viewed as a mere parol agreement. The consideration of it is the fact that the defendant had executed the bond in question. But this paper is not made part of the bond, nor is there, in the bond, any reference to the paper. It is on both grounds inadmissible. 1 *Sch. & Lef.* 22. We must construe the bond by itself. No conversation which preceded it, nor propositions, or representations, not introduced into it, are to be taken into view, in construing the instrument.

This paper, being mere parol evidence in relation to the bond cannot be admitted to explain, add to, vary or contradict the bond, and was therefore properly rejected. It was purely collateral to the instrument now in suit, and could not be used in defence. *Dow* v. *Tuttle*, 4 *Mass. R.* 405; *Dwight* v. *Pomeroy*, 17 *Mass. R.* 320; *Shed* v. *Pierce*, 17 *Mass. R.* 623; *Hanson* v. *Stetson*, 5 *Pick.* 506.

By the terms of the bond, *Heard*, the defendant, agreed to pay the plaintiff the sum of six dollars per acre for 1280 acres, one third part in thirty days from the date of the bond, one third in one year, and one third in two years from the date, with interest upon the same two notes, with good security, being given for the two last sums ; and if he paid the plaintiff, or his heirs, or assigns, the aforesaid one third part of said purchase money within the time aforesaid, and furnished the two notes aforesaid with the security aforesaid, said *Robinson* being ready and willing to make the deed of conveyance as aforesaid free of all incumbrances, then the obligation to be void, otherwise to remain in full force and virtue.

The instruction to the jury was, that " the plaintiff was not bound to tender a deed of the lot in question to the defendant, but

Robinson v. Heard.

that it was for the defendant to tender the money and notes mentioned in the condition of said writing obligatory to the plaintiff; and as the defendant made no such tender, the plaintiff was entitled to maintain his action."

As a matter of convenience, it may be well for a seller, in a contract like the present to prepare a deed conformable to the provision, to be delivered on the performance by the purchaser of what he engages to do. But when the terms of the instrument indicate that an actual payment of money is *first* to be made by the other party, the seller is not bound *first* to tender, but is on reasonable demand, to deliver a deed.

It seems not to be questioned in this case, but what the plaintiff had the regular title in him. Indeed the instrument shows from whom he received his deed.

This contract decidedly throws on the defendant the obligation of *first tendering the money* and the two notes with good security ; for without this he could not expect to find the plaintiff ready and willing to make the deed of conveyance free of all incumbrances. But this does not impose on the defendant the duty of parting with his money without receiving the deed of conveyance, provided he takes the precaution of demanding it, and the jury ought not to have withdrawn from them the question whether the plaintiff was on his part ready to perform.

Upon the views already advanced as to the admissibility of the paper, we think the answer of *Mr. Vose*, to the 5th cross interrogatory inadmissible.

Complaint is made against the direction, that " the rule of damages was not the difference between the value of the land at the date of the bond, and the value of the land when the contract was broken by *Heard*, but the rule was the whole amount which *Heard* agreed to give for the land at six dollars per acre, with interest thereon, on two thirds from the date of the bond, and on one third from *Sept.* 16, 1835."

When a contract is made to sell and convey on one side, and on the other to purchase and pay for land, on a breach of the agreement, each party has an election to seek for damages in a suit at law, or proceed in equity for a specific performance. It is rather unusual for the same party to pursue both remedies. If the seller

commence his suit at law, it is supposed that he is contented to keep the property, and pocket the damages which a jury may give him in satisfaction for the injury.

Should he wish to get rid of the land, he will proceed in equity to compel specific performance, and in that case nothing would be recovered but the money and interest which were to be given.

It may be that a man having contracted to sell his estate, from the very circumstance that the condition is not performed by payment of the price stipulated, may be ruined. Yet no system of laws could provide for all the remote consequences of the non-performance of any act. Human justice must stop at the direct and immediate and necessary consequences of acts and omissions, and not aim beyond a reasonable indemnification for them. 2 *Sto. Eq.* 548, 549, *note.*

Yet parties make their own contracts, and the object of law is to encourage, and compel the performance of them, if fairly made. A purchaser, who has entered into a contract, and agreed to pay a specific sum as the price of land to be conveyed to him, cannot be relieved from the payment thereof by the tender of a less sum, agreed upon in the contract as stipulated damages, to be paid in case of non-performance of the contract on his part. *Ayres* v. *Pease,* 12 *Wendell,* 393.

The appeal to the jury in this case, is to be relieved from the penalty of fifteen thousand dollars. If that sum had truly and intentionally been adopted and described in the contract as liquidated damages, and not as a penalty on failure of performance, it may be doubted whether a court or a jury could rightfully have changed it. And had the deed been tendered in season and brought into Court by the plaintiff and filed to be delivered to the defendant, perhaps the rule of damages prescribed by the Judge would appear to us to be correct. It would hold the defendant to pay what he agreed. The plaintiff did not stipulate to receive any part of that sum in land. And the argument then that because he holds the land, he ought not to recover the price stipulated to be paid by the defendant in money, ought not to avail, as it would tend to encourage people to break their contracts, in the hope of escaping with trifling damages, by casting the commodity back upon the seller's hands.

But under these exceptions, no tender of the deed appears to have been made, nor does it appear to be brought into Court. Under such circumstances, to give the plaintiff a perfect indemnity, the rule, the Court understands, to be the difference between the sum which the defendant agreed to give for the land, and the sum for which the plaintiff could have sold it on the day when the contract should have been performed. Had the plaintiff put it up and sold it at public auction, on that or the next day after the refusal to take upon fair notice, and obtained a sum of money for it, it would be the duty of the defendant to make up the deficiency, and those two sums would have been the same as the plaintiff would have received if the defendant had performed.

If the plaintiff has not done that, nor offered the title to the defendant, *then he elects to keep the land at what price it might have sold for at that time.*

We are not convinced of the propriety of rejecting the statements in the paper, which *Stinchfield,* as we must take it, admitted to be true. For *the deposition of B. Stinchfield was introduced by the plaintiff.* And it was competent evidence for the defendant for the purpose of affecting the testimony of *Stinchfield,* although the confession or admission as to the paper was not under oath. The effect of it might have been submitted to the jury, and doubtless it would have been argued, that *it went hard toward contradicting the allegation that he heard the person intended to be described as the defendant, declare that he would not take the deed.* It speaks too of recommending to the plaintiff to sell without exploring. Whether he meant that he also stated to him that he was satisfied there was but little or no timber thereon, it being nearly all burnt land, seems not quite so clear.

The plaintiff's counsel argues, that it was uncertain, illusory, and calculated to deceive. However that may be, after the proper and decided expression by the Judge of his intention to let in the proof of fraud, if it could be shewn, and it was not; we regret that this evidence was excluded. For the reasons stated as to the jury's right to pronounce on the question of the plaintiff's readiness to perform, and for the rejection of the statements in that paper, and the statement as to the rule of damages, the exceptions must be sustained, and a new trial granted.