Warren *v.* Wheeler.

HENRY WARREN *versus* ISAAC WHEELER.

If the obligor makes an express promise of performance to an assignee of the bond, the assignee may maintain assumpsit in his own name upon such promise.

The assignment of a bond is a good consideration for an express promise by the obligor to an assignee to perform or to pay.

If the obligor contracts to convey land, on the performance of certain conditions within a stipulated time, if the obligee shall elect to become the purchaser upon the conditions named, it is his duty to give notice of his election within the time, if he would require a conveyance.

Where by the contract performance is to be made by the parties respectively at the same time, that party who would claim performance of the other, must show a readiness and offer to perform on *his* part. But when the contract itself determines which party shall first prepare and offer to perform, neither the law, nor the tribunals, break in upon or disregard such agreement.

In estimating the value of a tract of land at a particular time, evidence of the value of other land, whether "in the neighborhood or more remote," and the value of particular portions of the land in question, as well as the sum the witnesses thought the whole tract might have brought, " based upon the price at which lands in the same town were selling in the market at the time," may be received as circumstantial evidence of the value.

In assessing damages for the breach of a contract to convey land, the jury may find the value of the land in money on the day of the breach of the contract, and in coming to a result, they are not confined to the value of the land for agricultural or other useful purposes, or the probable value of the land for building lots, but they may "take into consideration the marketable value at the time," and form their opinion "from taking a view of all the objects for which the land was desirable," and add interest on the value from the time the contract should have been performed.

THIS was an action of *assumpsit,* brought upon a written agreement made upon the back of a bond given by the defendant to one Kimball.

On June 11, 1835, the defendant gave his bond, under his hand and seal, to Jedediah Kimball, in the penal sum of six thousand dollars, having this condition. " The condition of the above obligation is such, that whereas the said Wheeler contracted with the said Kimball to sell and convey to the said Kimball, or his assigns, a tract of land in Bangor, being all that part of the lot that was purchased by said Wheeler of John M. Prince, which lies northwesterly of the part of said

lot sold by said Wheeler to Remick, being three acres more or less, at the rate of one thousand dollars per acre, to be paid one third in cash upon delivery of the deed, and the remainder half in one year, and half in two years, with interest annually. The purchaser to give good notes for the second and third payments, with satisfactory security.

" Now if the said Kimball, or his assigns, shall elect to become purchasers of said tract upon the above named conditions within sixty days from this date, and the said Wheeler shall thereupon execute and deliver or cause to be delivered to the said Kimball, or his assigns, upon request therefor, a good and sufficient deed of the above described premises, then this obligation shall be void and of no effect, otherwise it shall remain in full force."

On June 11, 1835, Kimball, for the consideration of $15, assigned one half the bond to Warren, the plaintiff; and on July 9, 1835, he also, for the consideration of $750, assigned the other half of the bond to the plaintiff. Both these papers were under seal.

On August 27, 1835, the defendant, Wheeler, made a writing on the back of the bond, under his hand, but not sealed, of which a copy follows.

" I hereby acknowledge notice to have been given on the within in due time and demand of deed, and also have received one thousand dollars, the first payment, according to the tenor of this bond. And I have agreed to deliver to Henry Warren (assignee) or his assignees a good warrantee deed within twenty days from date. And then said Warren or assignee shall deliver to me the notes mentioned within. And if said Warren shall have had said land surveyed in the mean time, and it shall fall short of three acres, then I am to discount in proportion. August 27th, 1835.

" Isaac Wheeler."

The action was founded on this agreement.

At the trial, before TENNEY J. the plaintiff offered to prove by Jedediah Kimball, that the plaintiff gave him fifteen dollars for the first assignment on the bond, and seven hundred and

fifty dollars for the second.   This  evidence was objected to by
the defendant but  it was  admitted.   He  further testified, that
he demanded of  the defendant, for the plaintiff,  a deed of the
land mentioned  in the bond, at the  defendant's house  in Gar-
land, the last of June, 1835.    The defendant said he could not
attend  to it then,  but  would  before the  bond  run out.    The
middle or last of  July he called upon the defendant again, and
told  him  he wished  him  to come  and run out  the land, and
give a deed ; that  the  defendant  set  a  time  when  he  would
meet the witness in Bangor, and attend to it ;  that the  witness
came  to Bangor,  at the  time  appointed ;  that  the  defendant
came a day or  two after, and said he could  not see to running
out the land at that time.    This, and what appears in the writ-
ing declared on, was all the evidence  relied upon by the plain-
tiff  to  show  a  performance  of  his  agreement  on  his part as
contained  in  the bond  or writing  declared  on.    The  plaintiff
then offered the record of a  mortgage executed by the defend-
ant to one Prince of the land described in the bond, which was
objected to by  the  defendant, but  admitted.    The  mortgage
was dated March 5,  1833, and was discharged  on the margin
of the record, Dec. 23, 1835.    Upon  the  foregoing evidence
the defendant  moved  for a nonsuit, but the  motion  was over-
ruled  by  the  Judge  presiding  at  the  trial,  on  the  agree-
ment  of  the  plaintiff  to  become  nonsuit,  if  he  is  not  en-
titled to maintain  his  action.  Witnesses were  introduced by
the plaintiff to prove the value of the land, and to prove what
land lying in the  neighborhood  of  the  land  described  in  the
bond sold for, in  the  fall of 1835 ;  and also  land  in Bangor
more remote.    This evidence  was  objected to,  but  was  re-
ceived.

  The plaintiff also  offered  evidence  to show for  what sum
lots on the land in question might  have sold  for in Sep. 1835,
in the opinion of  the witnesses, and  this evidence, though ob-
jected to, was received ;  and also  what the witnesses thought
the whole lot  might have brought  per acre, based upon  the
price at which lands in Bangor were selling in the market in
the fall of 1835, was admitted in evidence, though objected to,

Several witnesses for the defendant were introduced, who testified as to the value of lands in Bangor, and as to the actual value of the land in the bond mentioned, in 1835, and its diminished value in Oct. 1838, when this action was brought.

Hereupon the Judge instructed the jury, that the plaintiff could maintain the action in his own name; that the covenants and agreements in the writing declared on were independant; and that no tender of notes was necessary to be made by the plaintiff, further than what appeared by the writing declared on, and the evidence touching that point; that it was the duty of the defendant to tender a deed within the twenty days mentioned in the memorandum, declared on, upon the back of the bond; that in assessing the damages, they would find the value of the land on the fifteenth day of September, 1835, in money; and in coming to a result, they would not be confined to the value of the land for agricultural, or pastoral, or other useful purposes, or on account of the probability that the land would be in demand for building lots, but they might take into consideration the marketable value also at that time; and the result would be from taking a view of all the objects for which the land was desirable; and that their verdict on this question would be for what they considered the value of the land, estimated by the foregoing principles, on the fifteenth day of Sept. 1835, deducting therefrom the sum of $2000, which had not been paid, and interest on the balance so found from the said 15th Sept. 1835. The jury returned a verdict for the plaintiff for $2419,81, being the amount of $1765, and interest thereon.

If the presiding Judge was incorrect in ruling that this action could be maintained, upon the evidence adduced, the verdict was to be set aside and a nonsuit entered. If the action could be sustained, and any of the objections overruled are held valid, or if the rules given for assessing damages are incorrect, the verdict was to be set aside and a new trial granted; otherwise judgment was to be rendered upon the verdict.

*A. W. Paine*, for the defendant, contended:

1. That the action was improperly brought. Instead of

assumpsit in the name of Warren, it should have been debt on the bond in the name of Kimball, the obligee. The bond is the basis of the action, the writing being but the mere acknowledgment of certain facts. But if this writing can be construed into a contract, there was no consideration for it. A new consideration is necessary to support it as a contract. 1 Chitty on Pl. 10, 11. If this be a contract, it alters the whole tenor of the bond, and it is as necessary to show a consideration, as if there had been no bond.

2. Before the action could be maintained, the plaintiff should have given the defendant notice of his desire to purchase, that an opportunity might have been had to provide the deed. There was no promise by the plaintiff to take the land and pay the remaining consideration, and the defendant could not know that such was his desire, without notice. The fair inference was the contrary. *Hudson* v. *Swift*, 20 Johns. R. 24; *Fuller* v. *Hubbard*, 6 Cowen, 13.

3. The covenants in the bond were dependent, as were also the stipulations in the agreement. The plaintiff therefore should have made and tendered the notes, before he could call upon the defendant to perform. There were indeed no covenants or promises on the part of the obligee or promisee. They cannot be said to be independent stipulations, where they were all on one side. The defendant had no power to compel performance on the part of the plaintiff, when he had fully performed on his part. There is no ground for contending, that the plaintiff can call on the defendant to perform without showing a readiness to perform on his part. 4 Conn. R. 3; *Tompkins* v. *Elliot*, 5 Wend. 496; *Howe* v. *Huntington*, 3 Shepl. 350; *Dana* v. *King*, 2 Pick. 155; 1 Chitty on Pl. 314. By the very terms of the agreement, the notes were to be delivered at the same time of the delivery of the deed. As the plaintiff did not show, that the notes were ready, the action cannot be maintained for this cause alone. *Parker* v. *Parmelee*, 20 Johns. R. 130; *Brown* v. *Gammon*, 2 Shepl. 276; *Hunt* v. *Livermore*, 5 Pick. 395; *Howland* v. *Coffin*, 11 Pick. 151; *Kane* v. *Hood*, 13 Pick. 281; 1

Peters, 464; Couch v. Ingersoll, 2 Pick. 303; Drummond v. Churchill, 5 Shepl. 325. The plaintiff here had his election to take the deed or not; and if we had tendered it, and he had refused to take it, we should have been without remedy.

4. The mortgage to Prince can make no difference. The contract was merely to give a good and sufficient deed. This does not require that the title should be perfect. Gazley v. Price, 16 Johns R. 267; Tenney v. Ashley, 15 Pick. 546; Aiken v. Sanford, 5 Mass. R. 494.

5. The verdict should be set aside on account of the erroneous admission of testimony, in several particulars. It was wrong to admit testimony to prove the amount paid by Warren to Kimball for the transfer of the bond; or to prove the value of lands situated at a great distance from that in controversy, and different in quality; or to prove the value of land in the densely settled parts of the city, at a distance from the land described in the bond; or to prove at what price certain specific portions of the land could be sold.

6. The rule laid down by the Judge, relative to the measure of damages, was erroneous. The actual value of the land at the time, and not a speculation price, was the true measure. What speculators would give at that particular time had no tendency to show its true value. The instruction induced the jury to fix upon the price paid by Warren to Kimball, as the amount of damages, instead of the true value of the land, at the time the alleged contract is said to have been broken.

Warren, pro se, was informed by the Chief Justice, that he might reserve his argument until called upon for it.

The opinion of the Court was drawn up by

Shepley J. — The first objection is to the form of the action. In the case of Fenner v. Mears, 2 Bl. R. 1269, the defendant made a bond to one Cox, and indorsed upon it an agreement to pay to any assignee of Cox; the plaintiff, being such assignee, maintained assumpsit on that agreement. That case has been approved in many subsequent cases. It is then said, the promise to the plaintiff is not binding for want of

consideration and of mutuality. In the case of *Innes* v. *Wal-lace*, 8 T. R. 595, the Court say, " they were clearly of opinion, that the assignment of the bond to the plaintiff was a good consideration for the assumpsit of the defendant." And it was so decided in *Crocker* v. *Whitney*, 10 Mass. R. 319 ; and *Parkhurst* v. *Dickerson*, 21 Pick. 310. The case of *Forth* v. *Stanton*, with the notes appended, 1 Saund. 210, is not opposed to this doctrine. The decision in that case is, that there must be a new consideration to support a promise by an executrix to pay *de bonis propriis.*

The second objection is, that the plaintiff should have given the defendant " notice of his desire to purchase, that he might have an opportunity to provide the deed." No doubt such was the duty required by the bond ; but the defendant, in his written agreement indorsed upon it, says, " I hereby acknowledge notice to have been given on the within in due time, and demand of a deed." There was no occasion for a further notice or demand ; for the defendant had acknowledged, that these preliminary steps had been taken, and that the cash payment had been made ; and had thereupon agreed to deliver a deed within twenty days.

The third objection is, that the covenants in the bond, and the stipulations in the agreement indorsed upon it, were dependent ; and that the plaintiff should therefore have made and tendered the notes before he could call upon the defendant to perform. There can be no doubt, that it was the intention of the parties as expressed both in the condition of the bond, and in the agreement indorsed upon it, that the deed should be delivered and payment made by money and notes at the same time. And neither party would be obliged to perform unless the other did. In such case the general rule is, that the party, who would claim performance from the other, must show a readiness and offer to perform on his own part. But this rule does not prevail, when the contract itself determines, which party shall first prepare and offer to perform. When the parties have agreed upon this matter, neither the law, nor the tribunals, break in upon or disregard such agree-

ments. They are admitted to be effectual. Have the parties in this case agreed, which should first prepare and offer to perform? The defendant in the agreement indorsed upon the bond, as before stated, acknowledges notice of the acceptance of the terms of purchase, a demand for a deed, and the receipt of the cash payment of a thousand dollars, and then says, "I hereby agree to deliver to Henry Warren, assignee, or his assigns, a good warrantee deed within twenty days from date. And then said Warren, or assignee, shall deliver to me the notes mentioned within." The intention and effect of this language cannot be misunderstood. The defendant acknowledges, that the previous acts required of the other party had been so far completed, that it became his duty to prepare and present a deed, and then receive the notes on its delivery; and this he promises to do within a certain time. And this he has never done or offered to do. And it is as clearly a breach of his contract, as if he had promised in writing to pay the debt of another within a certain number of days, and then receive an assignment of the debt to himself, and had wholly neglected it.

Other objections have reference to the admission of testimony relating to the value of the land, and to the instructions respecting the measure of damages. It might not be a very unreasonable inference, that the value of three acres of land would not vary greatly from that "lying in the neighborhood," or from that in the same place "more remote," unless it should be proved to be of a different quality, or to be situated in the densely settled part of a village or city. And it does not appear, that this was so situated, or that testimony was received of the value of lands at any great distance from it. It would be circumstantial evidence only of the value of the three acres; and as such it might be received.

The instructions to the jury respecting the measure of damages, as well as upon the other points in the case, appear to have been correct.

*Judgment on the verdict.*