JOHN F. McKEEN *vs.* LEANDER M. BOOTHBY.

Cumberland.     Opinion October 28, 1930.

*William Lyons*, for plaintiff.
*Laughlin & Gurney*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, THAXTER, JJ.

PATTANGALL, C. J. Exceptions. Assumpsit. Money had and received. Verdict directed for defendant.

Defendant, a real estate agent residing in this state, offered for sale certain property in Portland, belonging to one Bishop, a resident of Canada, and plaintiff entered into an agreement in writing to purchase the same for $3,500, making a cash payment of $100. The agreement recited that the property was free of incumbrance.

An examination of the records disclosed the fact that in the deed to Bishop, the following restrictions appeared: "No house or other buildings shall be built on said lots within ten years of January 1, 1926 to cost less than $3,500. Except that after a dwelling house has been built, such out-houses as may be suitable and appurtenant thereto may also be erected. Houses built on said lots, including piazzas, sun parlors, and all other projections, must be set back twenty-five feet from the street lines."

Immediately on learning of these restrictions, plaintiff notified defendant that he would not go on with the trade, demanded a return of the cash payment, and it not being returned, brought this action for money had and received.

There is no question but that the building restrictions recited in the deed to Bishop constituted an incumbrance. *Roberts* v. *Levy* (N. Y.), 3 Abb. Prac. (N. S.), 311, 316; *Batley* v. *Foerdorer* (Pa.), 29 Atl., 868; *Whelan* v. *Rossiter* (Cal.), 82 Pac., 1082; *Hyman* v. *Boyle* (Mich.), 24 N. W., 163.

This being so, an action for money had and received would lie in favor of this plaintiff against the owner of the property to recover back any money which had been paid him on account of the purchase price, if paid in ignorance of the incumbrance.

But defendant urges that even if this is admitted, no such action lies against the agent of a disclosed principal and if plaintiff has been injured, he must seek redress from Bishop rather than from this defendant.

"No rule of law is better ascertained or stands upon a stronger foundation than this: that when an agent names his principal, the principal is responsible, not the agent." Hartop ex parte, 12 Vesey, 349; Story's Agency, 1st Ed., Sec. 261; 2 Kent's Commentaries, 3rd Ed., 629. But there are exceptions to this general rule.

It has been noted that while defendant was a resident of Maine,

his principal resided in New Brunswick. This Court in *McKenzie* v. *Nevius*, 22 Me., 138, and *Rogers* v. *March*, 33 Me., 106, decided that agents acting for foreign principals were personally liable on their contracts even in cases where the principal was disclosed and the agency was shown in the contract, basing its finding upon the authority of Judge Story, who, in his Commentaries on the Law of Agency, stated that agents acting for principals residing in a foreign country are held personally responsible upon all contracts made by them whether the principal is disclosed or not. In the words of Mr. Justice Tenney, speaking for the court in *Rogers* v. *March*, supra, "This exception to the general rule becomes itself a general rule within the scope of its application."

Judge Story's reasoning was that "the party dealing with the agent intends to trust one, who is known to him, and resides in the same country, and subject to the same law as himself, rather than one, who if known, cannot from his residence in a foreign country, be made amenable to those laws, and whose liability may be affected by local institutions, and local exemptions, which may put at hazard both his rights and his remedies." Story on Agency, 3rd Ed., Secs. 268-290.

The rule thus laid down has, however, been rejected in some jurisdictions and qualified in others. It was discussed at some length and seriously questioned in 2 Kent's Commentaries, 12th Ed., 854, and attention called to the fact that while the doctrine had been accepted in the courts of Louisiana and Maine, it had not been regarded as authoritative in the courts of New York and in the English courts in later cases.

As a result of the discussion of the matter, Judge Story in the sixth edition of his work modified the rule materially, stating his mature view as follows: "Probably the better rule is that the agent of a foreign principal is not as a matter of law personally liable on every contract made for his principal. It is rather a question of fact in each case, a question of intention, to be ascertained by the terms of the particular contract and the surrounding circumstances. When a written contract is made and expressed to be with a foreign principal and not with the agent, the latter is not liable, although the contract be signed by him and on account of the foreign principal."

The Louisiana court in *Newcastle M. Co.* v. *Red River R. R. Co.*, 36 Am. Dec., 686, followed the earlier rule given by Judge Story, but in *Maury* v. *Ranger*, 58 Am. Rep., 199, noting his changed view, reversed its position. *Bray* v. *Kettell*, 1 Allen, 80; *Kirkpatrick* v. *Stainer*, 22 Wend., 244; *Kaulback* v. *Churchhill*, 59 N. H., 296, and many other cases might be cited to the same effect.

In the latter case, the court, after quoting from Metcalf on Contracts that "the present doctrine is, that when the terms of a contract made by an agent are clear, they are to have the same construction and legal effect whether made for a domestic or for a foreign principal," adds that "the statement cited by the plaintiff from Story's Agency, sec. 268 (referring to the earlier edition), is not now recognized as law excepting perhaps in Maine and Louisiana."

The subject is briefly discussed in the notes of 6 A. L. R. at page 644. In 21 R. C. L., 850, the law is stated as originally laid down by Judge Story, the fact that he later changed his view not being noted. *McKenzie* v. *Nevius*, supra, and *Newcastle M. Co.* v. *Red River R. R. Co.*, supra, are cited as authority, the author having apparently overlooked the overruling of the latter case by *Maury* v. *Ranger*, supra. 2 C. J., 816, states that "By the more modern rule, however, it is immaterial whether the principal is a foreigner or not."

This latter statement is too general and needs qualification. The fact that the principal is a foreigner is not "immaterial." It is a fact to be considered and may, under some circumstances, affect the result. The rule now generally adopted is clearly and carefully stated in *Fowle* v. *Kerchner*, 87 N. C., 59:

"It is just this distinction that has been taken in the case of an agent contracting in behalf of a foreign principal. There, if the language of the contract is at all ambiguous, so as to leave it doubtful to whom the credit was given, the principal or the agent, the circumstance that the principal is resident abroad may be taken into consideration in determining that question — it being reasonable, in a case admitting of doubt, to suppose that the other contracting party trusted the agent residing at home and subject to the laws and process

familiar to himself, rather than one living beyond the reach of domestic laws."

To which may be added from *Bray* v. *Kettell*, supra:

"But still it is a question of intention, and if the contract be in writing, and its terms clearly manifest a purpose to bind the principal, though a foreigner, it must be deemed to be the final repository of the intention of the parties, and its construction and effect should not be varied so as to charge the agent in consideration of its unreasonableness or inconvenience."

Because of the fact that the position taken by our court in *McKenzie* v. *Nevius*, supra, and *Rogers* v. *March*, supra, apparently rested upon the original view expressed by Judge Story and that after further study and deliberation he modified the doctrine, we are constrained to hold that these earlier cases must be overruled in so far as they conflict with the statement of law expressed in the above quotations from *Bray* v. *Kettell*, supra, and *Fowle* v. *Kerchner*, supra, and that, in the instant case, the contract being in writing, the principal having been disclosed and nothing appearing in the document to indicate that the agent was relied upon to the exclusion of the principal, the fact that the principal was an alien in no way affects the situation.

But another consideration arises. While it is true that when an agreement to purchase real estate fails because of the inability of the owner to complete the trade and the purchaser has made a partial payment to a broker, an action for money had and received will not lie against the broker in favor of the purchaser if the broker, before receiving notice of purchaser's claim has paid the money to his principal, *Bogart* v. *Crosby* (Cal.), 22 Pac., 84; *Bailey* v. *Connell* (Mich.), 33 N. W., 50; *Conness* v. *Baird* (Tex.), 124 S. W., 113; *Abbott* v. *Crawford and Connover* (Wash.), 109 Pac., 1063, it is also true that if the money remains in the hands of the broker at the time of receiving such notice, he is so liable, even though he has disclosed the name of his principal and regardless of his right to commissions. *Goslin* v. *Martin* (Ore.), 107 Pac., 959; *Messer Company* v. *Ruff* (Ala.), 64 So., 51.

"The rule is that where money has been paid to an agent for his

principal, under such circumstances that it may be recovered back later, the agent is liable as a principal so long as he stands in his original position and until there has been a change of circumstances by his having paid over the money to his principal, or done something equivalent to it." *Pancoast* v. *Dinsmore*, 105 Me., 471, 473.

In the case at bar, it is admitted that defendant received the money now claimed by plaintiff on January 17, 1930, that on February 5 he was notified of plaintiff's claim, and that the money was not returned. There is no evidence that the money had been paid by defendant to his principal. The case is silent on that point. Defendant testified regarding other matters, but was not interrogated either by his own or plaintiff's counsel concerning this question.

In *Hathaway* v. *Burr*, 21 Me., 567, our court quoted with approval from *Butler* v. *Harrison*, Cowp., 566, the following statement of the law: "Ordinarily agents and factors for the sale of goods are expected to receive the payments. If the defendant had authority to sell, which must be presumed so far as he is concerned, there is nothing to indicate, that the money was to be paid to the principal. And there being no evidence, that he had paid it over to his principal, the action may be sustained against him."

Or, stated in different language but to the same effect, after proof of the receipt of the money by defendant under circumstances which gave plaintiff a right to have it returned to him, the burden of proceeding with the evidence devolved upon the defendant who might relieve himself of liability by proof that, prior to notice of plaintiff's claim, he had paid the money to his principal.

That fact, if it was a fact, was wholly within the knowledge of the defendant. It could not be known nor readily ascertained by plaintiff. Nor could it be presumed. In certain cases, it might be inferred from the usage of the business in which principal and agent were engaged. But whether or not the evidence justifies such an inference is a question of fact and for the jury.

In any event, defendant was not entitled to a directed verdict.

*Exceptions sustained.*