Joseph A. G. PELLETIER d/b/a et al
Joseph A. G. Pelletier, Inc.

v.

Lloyd G. DWYER and Joseph A. Roy, Inc.

Supreme Judicial Court of Maine.

April 2, 1975.

Daviau & Daviau, by Robert J. Daviau, Waterville, for plaintiff.

Jolovitz & Niehoff, by William P. Niehoff, Waterville, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

Plaintiff Joseph A. G. Pelletier brought an action against defendants Lloyd G. Dwyer and Joseph A. Roy, Inc. (Roy) to recover $5,000 paid over as a deposit on the purchase of real estate and retained by defendants when the deal fell through. The Superior Court (Kennebec County) entered judgment for the defendants, and plaintiff appeals. We sustain the appeal and remand for entry of judgment against the defendants.

The case was tried on an agreed statement of facts, which is summarized below in its essential details. See Me.R.Civ.P. 74(r); Field, McKusick & Wroth, Maine Civil Practice § 74.2, at 199 (2d ed. 1970). On November 16, 1971 plaintiff Pelletier and defendant Dwyer entered into an agreement for the purchase and sale of a certain parcel of land in Waterville, Maine. The agreement was entered upon prepared contract forms provided by defendant Roy, a real estate broker acting on behalf of Dwyer. By the terms of the contract the seller, Dwyer, covenanted to convey to his buyer a good and sufficient deed of conveyance on or before June 16, 1972. In consideration of the seller's covenant to convey, plaintiff agreed to pay a purchase price of $83,000, of which $5,000 was paid at the time of the signing of the purchase and sale agreement. Defendant Roy received plaintiff's check for $5,000 as a "down payment" and issued plaintiff a receipt dated November 16, 1971, signed by Mr. Roy, and bearing the title "Joseph A. Roy, Inc.—Real Estate."

The purchase and sale agreement further recited:

It is mutually agreed and understood that in the event that the title to said premises is not good and cannot be made good [on or before June 16, 1972], this agreement shall be void and the above sum of $5,000 refunded. But if the title to said premises is now good in the name of the vendor, or is made good in him [on or before June 16, 1972] and the purchaser refuses to accept the same, said sum of $5,000 shall be forfeited to Lloyd G. Dwyer.

In fact, Lloyd G. Dwyer did not have title to the real estate on the date of the purchase and sale agreement, November 16, 1971. Mr. Dwyer himself had a contract to buy the real estate and apparently counted on being able to have a good and sufficient deed in his own name on or before June 16, 1972 in order to satisfy his instant agreement with plaintiff.

The agreed statement of facts is silent as to the conduct of the parties from November 16, 1971 until June 15, 1972. The agreed statement then recites: "On June 15, 1972, one day before the time for closing had expired, Seller's agent, Defendant, Joseph A. Roy, Inc., sent a letter to plaintiff warning him of the midnight expiration date of June 16, 1972." At 9:30 a. m. the next day, June 16, defendant Dwyer received the deed to the real estate. The agreed statement recites: "No one ever told Purchaser, nor did purchaser have any reason to know of the existence of the unrecorded . . . [d]eed which was delivered to seller on the morning of the 16th of June, 1972."

The purchase and sale of the real estate was never consummated and the agreed statement discloses no further communication or relations between the parties. Mr. Dwyer recorded the deed on June 20, 1972. On August 15, 1972, plaintiff brought the present action against Dwyer and Roy to recover the $5,000 paid over as a "down payment." All parties agree that the primary issue in the present appeal is which party is entitled to the $5,000 deposit under the terms of the purchase and sale agreement and the facts described in the agreed statement.

Plaintiff mainly argues that defendant Dwyer did not have "good title" to the real estate on or before June 16, 1972, and so is obliged to refund the $5,000 deposit according to the contract provisions. The Superior Court ruled against plaintiff, holding that the deed received by Dwyer on June 16 was good title, and that the deed's being unrecorded did not put Dwyer in breach of the contract, since the unrecorded deed was title that could "be made good" within the terms of the contract simply by recording the deed.

In our view it is not necessary to reach the issues decided by the Superior Court. We may assume, without deciding the point, that Dwyer's receipt of the unrecorded deed at 9:30 a. m. on June 16 put him in a position to perform reasonably and satisfactorily within the terms of the contract. Neither need we decide whether time was of the essence under the contract, or whether plaintiff may have reasonably demanded time to inspect the deed by searching his grantor's title, or whether Dwyer might claim a reasonable extension of the contract beyond June 16 to cure any defects manifested in his deed or title. These are valid and interesting questions marginally presented by the facts and documents before us; but to the legal issues sub judice, these questions are only might-have-beens. The central, necessary question on the record is only this: do the legal relations of the parties by contract and by conduct place plaintiff in default of his agreement so as to warrant defendants' retaining plaintiff's $5,000 under color of that agreement?

■ As we read the purchase and sale agreement, plaintiff agreed to pay the balance of the purchase price ($78,000) upon Dwyer's granting of a "good and sufficient deed of conveyance." The contract appears to provide that the transaction be closed by a concurrent exchange of the seller's good and sufficient deed for the buyer's agreed-on purchase price. We may take it as settled doctrine that where the duties of performance are to be concurrent, such as payment by the purchaser and conveyance by the vendor, performance by one party or a tender of performance is a prerequisite in order to demand performance by the other party or to put the other party in default. See Appleton v. Chase, 19 Me. 74, 78 (1841); Brown v. Gammon, 14 Me. 276, 280 (1837); 3 American Law of Property § 11.44 (A. J. Casner ed. 1952); 7 S. Williston, Contracts § 924, at 762 (3d ed. 1963). Even assuming, as we do, that Dwyer was possessed of a good and sufficient deed as of June 16, he would not be in a position to demand performance of his buyer without tendering his own performance.

■ The language of the contract supports the conclusion that for Dwyer to place plaintiff in default, a tender of performance was required. The contract relates that if the title to the property were made good in the seller's name on or before June 16, 1972, "and the purchaser refuses to accept the same," then the sum of $5,000 shall be forfeited. This is the sole language in the contract referring to the operation of the forfeiture. Under this language it would appear that the buyer must refuse to accept the good title or deed before his deposit is deemed a forfeit. We trust it is not unduly simplistic for us to point out that in order for the purchaser to refuse to accept the good title, and so cause the forfeiture, there must be some performance by the seller that entails a

reasonable tender of the proffered title for the purchaser's examination. Thus we are of the opinion that the contract, properly construed, served to augment the general principles of concurrent conditions of exchange by placing on one of the parties, here the seller, the duty of first movement under the contract, to call into play its operative provisions. Warren v. Wheeler, 21 Me. 484, 490–91 (1842); Babb v. Kennedy, 19 Me. 267, 268–69 (1841); see Hill v. Hobart, 16 Me. 164, 170 (1839). Had Dwyer tendered the deed, giving plaintiff a chance to refuse to accept, the contract provisions would appear to compel plaintiff either to perform or to place himself in default, with appropriate consequences. See Augusta Bank v. Hamblet, 35 Me. 491, 496–97 (1853); Oatman v. Walker, 33 Me. 67, 72–73 (1851). But the tender of performance by the seller is a prerequisite under the contract if the buyer is to be put in default by refusing to accept the tender.

■ Questions surrounding the reasonableness of a tender of performance, and whether it properly serves to place the onus of concurrent performance on the other party, may primarily be questions for the trier of fact. See Robinson v. Heard, 15 Me. 296, 301 (1839). The tender need not be absolute, in the sense of a delivery to the actual possession of the other party; but the tender must be such as to manifest a willingness to perform in compliance with the agreement, and must be accompanied by all which is reasonably necessary to apprise the other party of the tender and the overt willingness to perform. See Russell v. Copeland, 30 Me. 332, 334–35 (1849). Therefore it remains the duty of the one who would exact performance of the other to prove that he was ready and willing and would have performed if the other party had. Howe v. Mitchell, 17 Me. 85, 88 (1840). Otherwise, if neither party had manifested any readiness to perform until after the time for mutual performance had elapsed, each might call upon the other as being the party in fault for damages. Low v. Marshall, 17 Me. 232, 234–35

(1840). Thus, we have held that where the seller could not prove any readiness or willingness to perform until after the expiration of the contract term, he could not exact performance of his purchaser. Id. at 235. It follows that the rule must be the same when the contract language places the duty of tendering performance on the seller in order to put the buyer into default.

■ Here, we hold defendant Dwyer has not proved a tender of performance. In part, defendant suffers from the format of the agreed statement of facts, which contains no statement that the seller tendered performance to plaintiff or took actions amounting to a reasonable tender so as to inform plaintiff of Dwyer's readiness and willingness to perform. The letter dated June 15, 1972 from defendant Roy to plaintiff stated only that the sales agreement would expire at midnight on June 16, 1972. We are not prepared to hold as a matter of law that this bare reminder by the seller constituted a tender of performance. Specifically, there is no mention in the letter of seller's having good title or a good and sufficient deed which would put plaintiff to his concurrent obligations under the contract. For it is only if plaintiff "refuses to accept" the seller's good title that the $5,000 is forfeited. The letter alone is pitifully inadequate to serve as a tender of performance which plaintiff might refuse to accept.

■ Other than the letter, there is no basis in the agreed statement to conclude that Mr. Dwyer tendered performance as a matter of fact. While we have not precluded the possibility that certain inferences from agreed statements of facts might be practicable in some cases, cf. Briggs Hardware Company v. Aroostook Valley R. R., 117 Me. 321, 325, 104 A. 8, 9 (1918), the general rule appears to be that when the parties choose to rely on an agreed statement of facts, they must state the facts with such certainty that legal principles may be applied, Carey v. Cyr,

150 Me. 405, 408, 113 A.2d 614, 617 (1955), and that the court cannot assume or infer a fact not agreed upon by the parties. Trafton v. Hill, 80 Me. 503, 509, 15 A. 64, 65 (1888). In Public Finance Corporation of Maine v. Scribner, 159 Me. 150, 152, 189 A.2d 368, 368–69 (1963), we stated:

> Counsel must, however, be vigilant in order that no fact be omitted which may be essential to the claim of either side. The omission of such facts from an agreed statement may result in a judgment adverse to the party who has the burden of proving them.

We think that defendant Dwyer has failed to provide facts in the agreed statement that would indicate that he had satisfactorily tendered performance. We are inclined to observe, however, that when the agreed statement recites that "No one ever told Purchaser, nor did Purchaser have any reason to know, of the existence of the unrecorded . . . [d]eed which was delivered to Seller on the morning of the 16th of June, 1972," there can be no tender of performance by seller, as a matter of law. For if there had been a reasonable tender, at very least the purchaser should have reason to know of it as a matter of fact.

■ For example, we may take judicial notice of the fact that June 16, 1972 was a Friday. See State v. Rush, Me., 324 A.2d 748, 750 (1974). We may further notice that June 16, 1972 was not an official holiday, but would appear to be an ordinary business day. See id. at 750. There were numerous ways in which seller or seller's agents may have reasonably tendered performance under the contract by apprising the plaintiff of seller's readiness and willingness to perform. It requires no great business acumen to avail oneself of the mails, or the telephone, or the automobile, to attempt direct efforts at reasonable communication. It may appear that the plaintiff evinced a degree of coolness that approached diffidence by not getting in touch with Mr. Dwyer as the time for performance neared and passed. Still, to put the plaintiff in default, Dwyer could not bank on plaintiff's apathy or passively and hopefully watch the clock tick toward midnight. The contract placed the duty of tendering performance on the seller; without the tender there was no default; and without a default, the seller was not entitled under the contract to lay claim to the deposit and cannot withstand plaintiff's action to recover the deposit.

■ In Tapper v. Warren, 129 Me. 481, 149 A. 608 (1930), the parties entered into a contract for the purchase and sale of real estate. Buyer paid $200 as a deposit upon the execution of the agreement; seller agreed to convey good title by a warranty deed on or before February 28, 1923. The appointed day for conveyance passed without any cognizable activity by the parties. Seller sued for breach of contract. It was held that since seller had not proved any communication to buyers relating to the contract or property, the buyers were not shown to be in default or in breach of their concurrent obligations. Id. at 482, 149 A. at 608. Although the *Tapper* case does not discuss any issues relating to the legal status of the buyer's deposit, we think the case is highly persuasive as ruling that the buyer was not in default under the circumstances there without an appropriate tender of performance by the seller. In the instant case it is established that defendants have no right to the deposit absent plaintiff's default. Hence, without a tender of performance by defendants, there is no default and defendants have no right to the $5,000.

■ ■ It remains to determine the nature of plaintiff's recovery and against whom it must run. We are of the opinion that return of the $5,000 together with interest and costs must be a joint and several liability of defendants Dwyer and Roy. The purchase and sale agreement between plaintiff and Dwyer recites that

> . . . in the event of the forfeiture of said sum of $5,000.00 as hereinabove

provided, said Lloyd G. Dwyer agrees that fifty percent of said sum so forfeited shall be paid over to, and retained by said Joseph A. Roy as compensation for his services and disbursements in connection with the transaction and for bringing about the execution of this agreement.

By signing the purchase and sale agreement, Dwyer appears to have expressed an intent to remit to his broker Roy as a commission one-half of any deposit forfeited by the purchaser. Such a supplemental agreement, even as part of a purchase and sale agreement to which the broker is not a party, may be given due legal effect. Cf. MacNeill Real Estate, Inc. v. Rines, 144 Me. 27, 33, 64 A.2d 179, 183 (1949). From the record before us, we know only that the $5,000 "down payment" was received from plaintiff by Mr. Roy on November 16, 1971. There is no statement in the agreed facts that Roy ever paid over any portion of the $5,000 to Dwyer, and we cannot infer that he did. See Carey v. Cyr, supra; cf. Desfosses v. Notis, Me., 333 A.2d 83, 88 (1975). Neither is there any indication who holds the $5,000 at the present time, or whether it is in escrow or has been divided by the defendants as they anticipated and provided in the purchase and sale agreement.

■■■■ There is no question that defendant Roy may be properly charged with liability for the retained deposit. So far as we know, he received it. We have held that where money has been paid to an agent for his principal, under such circumstances that it may be recovered back from the latter, the agent is liable as a principal so long as he stands in the original position and until there has been a change of circumstances by his having paid over the money to his principal, or done something equivalent to it. Pancoast v. Dinsmore,

105 Me. 471, 473, 75 A. 43, 44 (1909); cf. Maxwell v. Adams, 130 Me. 230, 232–33, 154 A. 904, 905–06 (1931). Under the above principles, defendant Roy might have exonerated himself from liability by establishing at trial, as a matter of fact, that he had paid over all of the deposit to his principal. But the burden was on defendant Roy to go forward with evidence that would relieve him of liability by showing that prior to notice of plaintiff's claim he had paid the money to his principal. See McKeen v. Boothby, 129 Me. 324, 329–30, 152 A. 53, 55 (1930). And when, as here, there is no evidence with regard to payment of the deposit to the principal, the broker is liable for the deposit. Id.

■■■ However, Roy's liability affords no legal relief to Dwyer. The purchase and sale agreement stated that on buyer's default, the deposit was to be forfeited to Lloyd G. Dwyer. It was Dwyer who failed to tender performance and wrongly claimed a default against plaintiff. In such a case we have not hesitated to rule that a buyer may be entitled to a return of his deposit on the purchase price, and that either the real estate agency or the seller or both may be liable. See Dulac v. Bilodeau, 151 Me. 164, 166, 116 A.2d 605, 606 (1955) (dictum). Whether one defendant shall indemnify the other, or complain against him in a subsequent action, is of no concern to us here. Both defendants are properly subject to liability, and the plaintiff should be made whole.

The entry must be:

Appeal sustained.

Remanded to Superior Court for entry of judgment for the plaintiff in the sum of $5,000.00, against both defendants jointly and severally, together with interest and costs.

All Justices concurring.