James **COBB**

v.

Louise **COUGLE.**

Supreme Judicial Court of Maine.

Feb. 5, 1976.

---

6. *State v. Trask,* 223 A.2d 823, 825 (Me. 1966).

Paine, Lynch & Weatherbee by Peter M. Weatherbee, James G. Lynch, Bangor, for plaintiff.

Twitchell, Gray & Linscott by Kenneth Jordan, Frederick J. Badger, Jr., Bangor, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

James Cobb brought an action against Louise Cougle seeking specific performance of an agreement allegedly made by her to convey certain real estate to him, and damages of $1,000. In the alternative Cobb asked damages of $7,500. Cougle filed a counterclaim which asserted that Cobb had caused damages to her real estate in the amount of $1,000. The Superior Court (Penobscot County) granted specific performance for the plaintiff and "dismissed with prejudice" the defendant's counterclaim. The defendant appeals the grant of specific performance. We deny her appeal.

The judgment could have rested on the following facts:[1]

Cobb, a resident of New Jersey, was interested in acquiring real estate in Maine. He was introduced to Cougle by Kathleen and Richard Hanscom, the defendant's daughter and son-in-law. Discussions between Cobb and Cougle regarding the sale of the latter's property came to fruition on April 12, 1971 when the plaintiff paid the defendant $1,500 in cash and the parties signed a typewritten document which recited,

> Louise Cougle received $1,500.00 April 12, 1971 from James Cobb for part payment on house and surrounding property situated in the town of Corinna, consisting of 75 acres more or less. Balance of $1,500.00 to be paid July, 1971.

The agreement was entered into with the oral understanding that, after title to the property had passed to Cobb, Mrs. Cougle, an elderly woman, could continue to live on the premises for the rest of her life. An attorney of the defendant's choosing was retained to prepare a deed conveying the property from the defendant to the plaintiff.

---

1. Neither party made a request under M.R. Civ.P. 52(a) that the court make designated findings of fact, and the presiding Justice's order of judgment makes no distinction between findings of fact and conclusions of law. Given this procedural posture, we assume that the court found all the facts necessary to support the decision rendered. *Boynton v. Adams*, Me., 331 A.2d 370, 374–75 (1975); *Jacobs v. Boomer*, Me., 267 A.2d 376, 379 (1970).

When Cobb returned to Maine in July, he and Cougle were advised by the attorney that it would be necessary to have the property surveyed before the sale could be consummated, and the plaintiff advanced $145 to this end to the attorney. Also in July, the plaintiff entrusted Kathleen Hanscom with $1,000 in cash to hold in "escrow" until the deed was prepared. He subsequently mailed the Hanscoms a check for $500 which, although it was made payable to the order of Richard Hanscom, was intended to be added to the escrow fund, and was so treated by the Hanscoms when they received it in July. Cobb told Cougle that she should feel free to "borrow" from the $1,500 fund if she needed money before the deed was readied. Finally, the plaintiff repaired a leaky section of the roof of the defendant's house during his July visit.

In late August or early September, the defendant withdrew—and never returned —$100 from the $1,500 of the plaintiff's money held by her daughter. Cobb came to Maine for the Labor Day weekend, did further repairs on the house, and was informed by Cougle that the deed had not yet been prepared. The plaintiff gave the defendant an additional $40 toward the cost of the survey, which she remitted to the attorney.

Cobb was once again in Maine during the months of November and December. He and Cougle discussed the possibility of installing a furnace in the house which would enable her to remain there during, the winter months, and Cobb consulted a local bank concerning financing for this venture. Before the installation of a furnace could begin, however, the relationship between the plaintiff and the defendant, which until this time had been cordial, deteriorated. In early December, Cougle told

Cobb that she believed that the property was worth more than $3,000, and refused to complete the deal at that price. The plaintiff initiated legal action on December 24, 1971.

The court ordered that the defendant convey the real estate to the plaintiff upon the payment by Cobb to Cougle of the amount remaining due under the April 12, 1971 agreement, which the court found to be $1,400.[2] Additionally, the order directed "That said conveyance from Louise Cougle to James Cobb is to be subject to a life estate for the benefit of Louise Cougle during the lifetime of Louise Cougle to live on said premises jointly with James Cobb."[3]

The five issues identified by the defendant on appeal may fairly be condensed into three questions:

I. Was the court's finding that the agreed price of the real estate was $3,000 supported by credible evidence?

II. Was the court's finding that the defendant should have the right "to live on [the] premises jointly with [the plaintiff]" supported by credible evidence?

III. Was the court's order of specific performance warranted?

We answer all three questions in the affirmative.

### I.

■ The defendant's first issue requires no more than a brief response. The court's implicit factual finding that the agreed price of the real estate was $3,000—not $4,000 as claimed by the de-

2. The record is unfortunately unclear as to how much of the $1,500 originally held by Kathleen Hanscom was returned to the plaintiff upon the defendant's refusal to complete the transaction in December. The court apparently determined that the plaintiff owed $1,400 ($1,500, minus the $100 withdrawn by the defendant in August or September) on the

April 12 agreement, and this impresses us as a reasonable deduction drawn from an admixture of conflicting evidence.

3. The term "premises," as used in this context, refers to land and any buildings located thereon. Black's Law Dictionary (4th Ed. 1968).

fendant—is supported by credible evidence and is therefore not clearly erroneous. *Leighton v. Leighton*, Me., 329 A.2d 164, 166 (1974). Findings of fact, whether express or implied, shall not be set aside unless clearly erroneous. M.R.Civ.P. 52(a); *Gay v. Gay's Super Markets, Inc.*, Me., 343 A.2d 577, 579 (1975). We accept the court's finding as conclusive. *Atlantic Acoustical & Insulation Co. v. Moreira*, Me., 348 A.2d 263, 266 (1975).

### II.

■ The defendant secondly attacks that part of the court's order which provides her with a *life estate to live on the premises jointly with the plaintiff* and argues instead that she should have been permitted to retain an absolute, exclusive life estate in the property. The court's conclusion that the defendant's right to live on the premises was not exclusive, but was to run concurrently with the plaintiff's interest in the property, represents a factual finding which is supported by credible evidence. Under the familiar principles enunciated in *Leighton, Gay,* and *Atlantic Acoustical & Insulation Co.*, supra, this finding will not be disturbed, and the defendant's contention that this aspect of the judgment below is in error is rejected.[4]

### III.

Finally, the defendant does not deny that on April 12, 1971, she made a binding written contract to convey her real estate to the plaintiff. She reasons, nonetheless, that her contractual obligation to convey the property was discharged because of the alleged failure of the plaintiff to at any time perform his parallel contractual duty

of tendering the defendant $1,500, the balance of the purchase price.

■ The defendant is correct in her legal premise: the April 12 contract contemplated concurrent duties of performance, and as a prerequisite to demanding performance by the defendant or putting her in default, it was necessary that the plaintiff either perform his contractual duty or make a tender of performance. *Pelletier v. Dwyer*, Me., 334 A.2d 867, 870 (1975).

■ The facts, however, do not support the defendant's assertion that the plaintiff failed to make a tender of performance. "The tender need not be absolute, in the sense of a delivery to the actual possession of the other party; but the tender must be such as to manifest a willingness to perform in compliance with the agreement, and must be accompanied by all that is reasonably necessary to apprise the other party of the tender and the overt willingness to perform." *Id.* at 871. During the month of July, the plaintiff placed $1,500 in the hands of the defendant's daughter and made it known to the defendant that she could borrow an unlimited amount from this fund. It was the unmistakable mutual understanding of the parties that this $1,500 was the balance of the purchase price, which would accrue to the defendant absolutely upon the transfer of a deed to the property to the plaintiff. It is clear, in short, that the plaintiff made a tender of performance in July which was sufficient to fulfill his contractual duty.[5]

Although the parties anticipated on April 12 that it would be possible to conclude their deal in July, it is apparent that, because of the unavailability of the deed, both plaintiff and defendant continued to

---

4. The correctness of the court's characterization of the defendant's interest in the property as a "life estate" has not been contested by the defendant, or by the plaintiff by the filing of a cross-appeal, M.R.Civ.P. 73(e), and we accordingly express nor intimate any opinion whatsoever on this issue.

5. In view of our determination that the plaintiff made a legally sufficient tender of performance in July, it is unnecesary to discuss the defendant's contention that "time was of the essence" of the April 12 agreement. This argument would be material only in the event that we found that the plaintiff had failed to make a tender of performance in July.

regard the transaction as "open" until the defendant finally repudiated the contract in December. The plaintiff did further repair work on the house in September, made no demand on the defendant or the Hanscoms for the return of the $1,500 which he had given them in July, and contributed $40 in addition to the $145 he had previously advanced toward the cost of the survey. The defendant, for her part, withdrew $100 of the plaintiff's $1,500 held by her daughter, and made no objection to the work that the plaintiff was performing on the house.

■ The distinct impression which emerges from the facts, then, is that from July until December the plaintiff manifested a continuous "willingness to perform in compliance with the agreement." *Id.* The defendant, by contrast, at no time indicated her readiness to perform her obligation of conveying her property to the plaintiff. By tendering his performance, the plaintiff satisfied the legal prerequisite of putting the defendant in default of the contract, and the defendant's ultimate refusal to go forward with the transaction in December therefore constituted a default on her part. In these circumstances, the court's order of specific performance for the plaintiff was appropriate.

The entry shall be:

Appeal denied.

Costs to the plaintiff.

All Justices concurring.

WEATHERBEE, J. did not sit.