**FORD MOTOR CREDIT CO.**

**v.**

**Barnett I. SHUR, Executor under the Will of Arthur M. Waterman.**

Supreme Judicial Court of Maine.

April 13, 1978.

---

Preti, Flaherty & Beliveau by David M. Cohen (orally), Herbert A. Crommett, Portland, for plaintiff.

Bernstein, Shur, Sawyer & Nelson by Philip H. Gleason (orally), Gordon Grimes, Richard LeBlanc, Portland, for defendant.

1.  The parties have stipulated that a 15% attorney's fee should be added to the amount otherwise found due from the executor under Mr. Waterman's guaranty.

2.  This case was decided by the Superior Court on the basis of stipulated facts and exhibits. Although the Superior Court's one sentence order of judgment merely directed judgment for the plaintiff in a set amount, we must assume that the court found all the facts necessary to support its decision. *Cobb v. Cougle,* Me., 351 A.2d 110, 111 n. 1 (1976). In this

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

■ Ford Motor Credit Co. (Ford) brings this appeal from a Superior Court judgment entered in its favor in the amount of $1,192.51 against Barnett I. Shur, Executor under the Will of Arthur M. Waterman. Ford claims that the judgment should be increased by an additional $5,000 plus 15% of that amount for attorney's fees.[1] We sustain the appeal.

Ford brought this action to enforce against Mr. Waterman's estate a guarantee obligation assumed by him when he executed and delivered to Ford a "Wholesale Financing Guaranty" covering "present and future obligations [of Maine Motors Company (Motors)] to [Ford] arising out of or in connection with [Ford's] financing for [Motors] merchandise held for sale or demonstration by [Motors]."[2] Mr. Waterman, principal owner and president of Motors, purported to guarantee unconditionally "the prompt and unconditional payment, performance and discharge" of all such present and future obligations of Motors to Ford. On the date of Mr. Waterman's death, April 15, 1974, Motors owed Ford a total of $46,232.92 which the parties stipulate was subject to Mr. Waterman's guarantee. On May 9, 1974, Motors voluntarily surrendered to Ford thirteen vehicles. The successor president of Motors acknowledged "that the surrender of possession of the said property does not discharge or release [Motors] from any of [Motors'] obligations to [Ford] except to the extent the proceeds of sale by [Ford] are so applied." Motors'

case, however, where the Superior Court made its determination entirely on stipulated facts and documentary evidence without receiving any oral testimony, the Law Court is free to make its own factual conclusions from the same evidence, without applying the "clearly erroneous" rule to the presumed findings of the lower court. *See Brengelmann v. Land Resources of New England & Canada, Inc.,* Me., 380 A.2d 213, 214 n. 1 (1977); *Northeast Investment Co., Inc. v. Leisure Living Communities, Inc.,* Me., 351 A.2d 845, 854 (1976).

attorney also stated in the transmittal letter accompanying such surrender form:

"It is also my understanding that if the sale of these vehicles results in an amount over the amount due on the floor plan and freight, such excess amount will be returned to Maine Motors."

Four days later, on May 13, 1974, a stockholder of Motors filed a complaint seeking the appointment of a receiver for Motors. A receiver was appointed by the Superior Court on May 20, 1974. Two days later the newly appointed receiver filed a "Petition to Determine Disputed Claim," raising a question as to Ford's alleged security interest in the thirteen vehicles and containing a request, joined in by Ford, that Ford "be authorized to sell and convey said vehicles as aforesaid and the proceeds obtained therefrom be held in escrow by the said Ford . . . pending determination by this Court as to the validity of claims of Ford . . . and the Receiver aforesaid." Pursuant to that petition and a court order thereon, the thirteen vehicles were sold by Ford for $45,195.95. Nearly a year later, on May 21, 1975, the receivership court approved a settlement between Ford and the receiver by which Ford paid the receiver "the sum of $5,000 in full compromise settlement of the Receiver's claim of preference by repossession of thirteen motor vehicles."

In this action it is the defendant's position, with which the Superior Court in its judgment agreed, that Ford is entitled to recover only the difference between (i) Motors' liability to Ford, namely, of $46,232.92, and (ii) the gross proceeds of the sale of the thirteen vehicles, namely, $45,195.95; plus an attorney's fee of 15% of that difference. We disagree with both the defendant and the court below and accordingly sustain the appeal.

Upon his death, Mr. Waterman was the absolute guarantor of obligations of Motors to Ford in the amount of $46,232.92. By the express terms of the Wholesale Financing Guaranty executed and delivered to Ford by Mr. Waterman, his guarantor's liability would subsist even if "any security

held in connection with any of the Wholesale Obligations may, at any time in whole or in part be . . . compromised, settled or released by" Ford. Mr. Waterman had further agreed that Ford should "not be liable for failure to collect or realize upon . . . security held in connection with any of the Wholesale Obligations, or any part thereof." On the facts of the case at bar, the only possible reduction of Mr. Waterman's liability that could, and did, occur resulted from Ford's realization of a portion of its security claim to the thirteen vehicles.

■ The $5,000 payment by Ford to Motors' receiver related to the security given by Motors to secure the obligation guaranteed by Mr. Waterman and to Ford's attempt to realize upon it. The $5,000 paid in settlement to the receiver was made in recognition of the plausible claim by the receiver that Ford, by failing to file a proper continuation statement, had lost any and all security for the guaranteed indebtedness. If by adjudication or otherwise it were determined that Ford had no valid security interest at all in the thirteen vehicles surrendered by Motors to Ford for sale under the escrow agreement, Mr. Waterman's estate would be liable for the full $46,232.92 owed by Motors. The estate cannot complain that Ford succeeded in effecting a settlement that gave Ford (and indirectly the guarantor) the benefit of the entire security interest in the thirteen vehicles, less only $5,000. The net result of Ford's efforts in realizing upon the security was its recovery of $40,195.95. This amount it properly applied against the guaranteed indebtedness. The executor's knowledge or lack of knowledge of the terms of the settlement between Ford and the receiver is irrelevant to the guarantor's obligation to pay the entire amount owed by Motors at the time of Mr. Waterman's death, reduced only by the *net* amount that Ford realized upon the security.

The entry must be:

Appeal sustained;

Judgment vacated;

Remanded to the Superior Court for entry of judgment for the plaintiff in the amount of $6,942.51;

Appellant allowed one half of its taxable costs on appeal.

POMEROY, J., did not sit.